**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BINYOMIN RUTSTEIN** and **EF GROUP HOLDINGS, LLC,**

      Plaintiffs,

v.                                                    Case No. 8:24-cv-02417-WFJ-AAS

**VIVA 5 GROUP, LLC; MARK JAGGI; DAVID BUNCH; BRIAN BAER;** and **MATT NEWMAN**,

      Defendants.

_____/

**ORDER**

Before the Court is Defendants Viva 5 Group LLC ("Viva 5"), Mark Jaggi ("Jaggi"), David Bunch ("Bunch"), Brian Baer ("Baer"), and Matt Newman's ("Newman") Motion to Dismiss the Complaint filed by Plaintiffs Binyamin Rutstein ("Rutstein") and EF Group Holdings, LLC ("EF Group") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 32. Plaintiffs have responded in opposition. Dkt. 37. As explained below, Defendants' motion to dismiss is granted.

**BACKGROUND**

This case stems from the sale of a supplement company and the subsequent fallout. Plaintiff Rutstein co-founded "Nature's Craft," a vitamin and supplement company. Dkt. 1 ¶¶ 1, 9, 11, 20. Plaintiff EF Group is owned and managed by a

Delaware trust whose sole beneficiary is Rutstein. *Id.* ¶ 10. BioGreen Labs (the primary operating entity for Nature's Craft) sells the company's supplements and vitamin products. *Id.* ¶¶ 22-23. Defendants Baer and Newman are co-founders of Defendant Viva 5. Dkt. 32 at 3. Defendant Jaggi is Viva 5's CFO, and Defendant Bunch is Viva 5's CEO. *Id.*

In May of 2021, Rutstein (and his co-founder Meir Chapler) entered negotiations for Viva 5 to buy the Nature's Craft brand. Dkt. 1 ¶ 26. After a period of negotiations, Plaintiffs agreed to sell Nature's Craft's entire operation to Viva 5. *Id.* ¶ 31. The final agreement valued Nature's Craft at $23 million with $11.5 million in cash payment and $11.5 million in "Tracking Units" and stock paid to Plaintiff Rutstein and Mr. Chapler (not a party in this case). *Id.* The parties signed an Equity Purchase Agreement to finalize the transaction. *Id.* ¶ 33. In connection with the transaction, Plaintiffs were represented by experienced legal advisors (the Buchalter law firm) and investment advisors (Capstone Partners), who were paid $1,045,000 at the closing for their services. Dkt. 32-1 at 44.

Viva 5 provided Plaintiffs with various financial documents as part of the sale, including a balance sheet and a profit and loss statement. Dkt. 1 ¶ 58. At closing, Plaintiff Rutstein and Mr. Chapler received $11.5 million in cash and $11.5 million in the form of tracking units in BioGreen and Class C-2 Common Units in Viva 5. *Id.* ¶¶ 31-33. The tracking units in BioGreen and Common Units in Viva 5 were

2

issued pursuant to the Third Amended and Restated Operating Agreement. *Id.* ¶ 31, 56. Specifically, Plaintiffs and Mr. Chapler received $6.9 million in tracking units associated with Nature's Craft and $4.6 million in Class C-2 Units associated with Viva 5. *Id.* ¶ 31. These tracking units carried "distribution rights" that allowed Plaintiffs to retain a percentage of the profits generated by Nature's Craft. *Id.* ¶ 32.

After the sale, Plaintiffs claim Viva 5 "plundered" Nature's Craft to support its debts. *Id.* at 11. Specifically, Plaintiffs allege that "Viva 5 has manipulated the finances of Nature's Craft to the detriment of Plaintiffs in three ways: (i) reducing the profitability of Nature's Craft by pushing down losses from Viva 5; (ii) causing Nature's Craft to lend any cash it generates from operations to Viva 5; and (iii) concealing the financials of Viva 5 from Plaintiffs." *Id.* ¶ 34.

Plaintiffs fail to attach any transaction documents from the Nature's Craft sale to the Complaint. However, Defendants' motion to dismiss provides seven transaction documents "central to Plaintiffs' claims, and their authenticity is undisputed."[1] Dkt. 32 at 5. The attached transaction documents are as follows:

> Dkt. 32-1 – Equity Purchase Agreement, dated September 17, 2021
> Dkt. 32-2 – Subscription Agreement dated September 17, 2021
> Dkt. 32-3 – Certificate of Designation, Tracking Units – Nature's Craft, dated September 17, 2021
> Dkt. 32-4 – Viva 5's Third Amended and Restated Operating Agreement

---

[1] Plaintiffs' response does not dispute the authenticity of these transaction documents and frequently cites provisions in these documents. *See generally* Dkt. 37.

> Dkt. 32-5 – Plaintiffs' Joinder to Third A&R OA, dated September 17, 2021
> Dkt. 32-6 – Viva 5 Credit Agreement dated April 27, 2021
> Dkt. 32-7 – Guarantor Joinder Agreement to Credit Agreement

Dkt. 32 at 5.

Plaintiffs' Complaint now brings the following six counts against Defendants: Constructive Fraud (Count I), Fraudulent Inducement (Count II), Breach of Fiduciary Duty (Count III), Violation of Section 10b of the Securities Exchange Act and Rule 10b-5, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5[2] (Count IV), Violation of the Florida Securities and Investor Protection Act ("FSIPA"), Fla. Stat. §§ 517.301, 517.211 (Count V), and a negligence claim against Defendant Bunch (Count VI). Dkt. 1.

Defendants' motion seeks dismissal of all claims because Plaintiffs have allegedly ignored all of the signed transaction documents, which provide that "(i) BioGreen is a Guarantor of Viva 5's secured debt, (ii) cash distributions can only be made to Members after payment of all debt obligations and are subject to restrictions under the Credit Agreement, and (iii) Plaintiffs, while represented by experienced legal counsel and investment advisors, expressly disclaimed all reliance on any purported pre-Transaction statement." Dkt. 32 at 12–13. Further, Defendants

---

[2] Securities Exchange Act of 1934, § 10(b), 48 Stat. 891 (1934) (codified as amended at 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5).

contend Plaintiffs fail to plead fraud with any particularity as to any specific statement made under Rule 9(b). *Id.* at 13.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the Plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

Federal Rule of Civil Procedure 9(b) requires that, for complaints alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a

5

person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Rule 9(b) requires a complaint to set forth "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation omitted). The failure "to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Id.* (citation omitted).

Finally, a court considers only the four corners of the complaint, and the exhibits attached to the complaint in a motion to dismiss. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, "a document outside the four corners of the complaint may . . . be considered" as incorporated by reference if the document "is central to the plaintiff's claims and is undisputed in terms of authenticity," regardless of whether it is "mentioned in" or "attached to" the complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024).

## DISCUSSION

Based on a careful review of the pleadings, the Court grants Defendants' motion to dismiss the Complaint without prejudice. As discussed below, the

Complaint fails to adequately plead all counts, which includes Rule 9(b) and the Private Securities Litigation Reform Act of 1995's ("PSLRA") heightened pleading requirements.

## I.    Counts I and III

Beginning with Constructive Fraud (Count I) and Breach of Fiduciary Duty (Count III), Plaintiffs allege (against all Defendants) that because their tracking units "derive value from Defendants' actions, with Defendants acting as fiduciaries for Plaintiffs' interests," the Defendants breached their fiduciary duty by "(i) pushing down losses from Viva 5 to reduce the profitability of Nature's Craft; (ii) removing cash generated from Nature's Craft by making loans to Viva 5 that Defendants do not have the ability or intent to repay; and (iii) engaging in self-dealing transactions." Dkt. 1 ¶¶ 71, 74, 91. Plaintiffs assert that Defendants engaged in the above conduct to make Viva 5 appear more profitable and pay down Viva 5's debt. *Id.* ¶¶ 76, 93. Defendants respond by arguing there is no fiduciary relationship in the first place because "the contractual documents by which [Plaintiffs] are bound mandate the conclusion that the Transaction was an arms-length, business transaction." Dkt. 32 at 18.

The Court addresses constructive fraud and breach of fiduciary duty together because the elements of both claims are similar. Constructive fraud does not require a showing of an intent to misrepresent or conceal, and thus, the claim only needs to

meet the pleading requirements of Rule 8. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958–59 (11th Cir. 2009); *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010). Under Florida law, "constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'" *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quoting *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003)).

To state a cause of action for breach of fiduciary duty, the plaintiff must allege the following elements: "1) existence of a fiduciary duty; 2) a breach of that duty; and 3) damage proximately caused by that [breach]." *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th DCA 2022). As such, when bringing a constructive fraud claim and a breach of fiduciary duty claim, the plaintiff must properly plead the existence of some fiduciary or confidential relationship. *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1179 (quoting *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)).

Here, it is unclear at this stage whether the issued tracking units give rise to a fiduciary relationship between the parties. As pled, the Court finds Plaintiffs have failed to adequately allege a fiduciary duty because the Complaint fails to describe the full relationship between the parties based on the transaction documents. *See* Dkt. 1 ¶¶ 70-77, 87-94. Even after accepting as true that no tracking unit distributions

were made because Nature's Craft profits were used to satisfy Viva 5's debt obligations, Plaintiffs' conclusory statement that tracking unit ownership means "Defendants [are] acting as fiduciaries for Plaintiffs' interests" is an unsupported legal conclusion that the Court need not accept as true. *Iqbal*, 556 U.S. at 678. Plaintiffs need to properly allege how tracking units create a fiduciary relationship between the parties based on the undisputed transaction documents from the Nature's Craft sale. Indeed, as Defendants correctly point out in their motion to dismiss, an arms-length transaction does not give rise to a fiduciary duty, *see Am. Honda Motor Co.*, 390 F. Supp. 2d at 1179, and "[i]f the complained of [conduct] is allowed under the contract, it cannot form the basis for a breach of fiduciary duty claim." Dkt. 32 at 16 (citing *Hallock v. Holiday Isle Resort & Marina, Inc.*, 4 So. 3d 17, 21 (Fla. 3d DCA 2009)). Thus, Plaintiff must plead actionable claims with more particularity. The Court dismisses Counts I and III without prejudice.

## II.    Counts II, IV, and V

Next, Plaintiffs bring claims against Defendants for fraudulent inducement (Count II), violation of section 10b and Rule 10b-5 of the Securities Exchange Act (Count IV), and violation of the FSIPA, Fla. Stat § 517.301 (Count V). In each count, Plaintiffs claim Defendants materially misrepresented the value of the tracking units and falsely promised Plaintiffs would earn approximately "thirteen times" the initial stated value. Dkt. 1 ¶¶ 84, 98, 106. Defendant allegedly knew these

misrepresentations were false, as evidenced by "Viva 5's subsequent plunder of $8.5 million in cash reserves associated with Nature's Craft and . . . inappropriately pushed down more than $9.0 million in unjustified losses to Nature's Craft." *Id.* ¶¶ 84, 99, 107. Plaintiffs contend they sold Nature's Craft to Viva 5 after relying on Defendants' false misrepresentations about the "worthless tracking units." *Id.* ¶¶ 86, 101, 102, 109, 110. Defendants respond by arguing that "[n]owhere in Counts II, IV, and V do Plaintiffs identify any specific alleged actionable misrepresentation that was made by any specific Defendant." Dkt. 32 at 20. The Court agrees and dismisses Counts II, IV, and V without prejudice.

Because Counts II, IV, and V are state law fraud and private securities fraud claims, they must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standards and the additional pleading requirements imposed by the PSLRA. *FindWhat Inv. Grp.*, 658 F.3d at 1296. "[A] plaintiff must also satisfy the pleading requirements of Rule 9(b) . . . in order to state a claim" under Fla. Stat. § 517.301. *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011). The Court addresses each count in turn.

### a. Count II- Failure to state a claim for fraudulent inducement

Under Florida law, there are four elements of fraudulent inducement and fraudulent misrepresentation: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the

representation induced another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. 5th DCA 2022) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Here, the Complaint fails to comply with Rule 9(b)'s heightened pleading requirements. Plaintiffs vaguely allege that "Mr. Jaggi and Mr. Bunch materially misrepresented the facts associated with those Tracking Units" (Dkt. 1 ¶ 82) but never specify what misrepresentations were made, when the oral or written representations were made, where or in which documents the representations were made, or any other facts from which the Court can infer an intent by Defendants to induce reliance. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (noting a plaintiff "must set forth the who, what, when, where, and how" of the alleged fraud under Rule 9(b)). The only supposed misrepresentation is that "Viva 5 and its executives misrepresented the value of those Tracking Units, at one time promising that Plaintiffs would earn approximately thirteen times the stated value of the Tracking Units. Yet Viva 5 and its executives knew those representations to be false." Dkt. 1 ¶ 84. The Complaint, however, does not allege who made this statement, when this promise was made, or how it induced Plaintiffs to rely on it. Without any other factual allegations, simply stating that "Plaintiffs relied on Defendants' misrepresentations and sold Viva 5 their successful business .

. . in exchange for worthless Tracking Units" is a conclusory statement that fails to state a claim for relief. *Id.* ¶ 86.

Additionally, the Complaint also briefly mentions that "Mr. Bunch promised big returns on these Tracking Units. . . . [and] claimed that upon a future sale of Viva 5, Viva 5's subsidiaries—the ones associated with Tracking Units—would each receive independent valuations. And then, so long as the Nature's Craft brand had increased its profits over time, Plaintiffs would be entitled to share in the corresponding appreciation in value associated with Nature's Craft." Dkt. 1 ¶ 30. Looking at the Complaint in the light most favorable to Plaintiffs, the Court finds these statements are not material or actionable at this time. The Eleventh Circuit has noted that "there are some kinds of talk which no sensible man takes seriously, and if he does, he suffers from his credulity." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1319 (11th Cir. 2019) (citation and internal quotations omitted). Specifically, "generalized, vague, nonquantifiable statements of corporate optimism," is often referred to as corporate "puffery." *Id.* at 1318. Defendant Bunch's statements of "big returns," "a future sale of Viva 5," and "entitlement to corresponding appreciation" following a future Viva 5 sale resembles (without more) unactionable "corporate puffery." These issues collectively represent a failure to adequately plead fraudulent misrepresentation.

### b. Count IV- Failure to state a § 10(b) and Rule 10(b)-5 claim

To state a claim for securities fraud under § 10(b) and Rule 10b–5(b), a plaintiff must adequately plead: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013). Additionally, under the PSLRA, Rule 10b–5 claims predicated on allegedly false or misleading statements or omissions require a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). And for all private Rule 10b–5 actions requiring proof of scienter, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [i.e., scienter]." *Id.* § 78u–4(b)(2). If these PSLRA pleading requirements are not satisfied, the court "shall" dismiss the complaint. 15 U.S.C. § 78u–4(b)(3)(A); *see FindWhat Inv. Grp.*, 658 F.3d at 1296–97.

Here, Plaintiffs' Complaint is deficient for largely the same reasons discussed for Count II. Plaintiffs make the same unsupported allegation that Viva 5's executive intentionally misrepresented the value of the tracking units by "promising that

Plaintiffs would earn approximately thirteen times their initial stated value." Dkt. 1 ¶ 98. Again, the Complaint is devoid of factual assertions about where the oral or written misrepresentations can be found, the time and place of each statement, the person responsible for making them, and the precise content of such statements and the manner in which they misled Plaintiffs. These Rule 9(b) deficiencies are already fatal to Plaintiffs' securities fraud claim.

However, Plaintiffs response argues for the first time that its Rule 10b-5 claim is a "scheme liability" claim. Dkt. 37 at 14. "Scheme liability occurs when a defendant employs 'any device, scheme, or artifice to defraud,' 17 C.F.R. § 240.10b-5(a) (Rule 10b-5(a)), or 'any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,' 17 C.F.R. § 240.10b-5(c) (Rule 10b-5(c))." *IBEW Local 5959 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 Fed. App'x 850, 858 (11th Cir. 2016). "Misleading statements and omissions only create scheme liability in conjunction with conduct beyond those misrepresentations or omissions." *Id.* (citation omitted). "To allege a violation of Rule 10b-5(a) and (c), a plaintiff must plausibly allege that (1) the defendant committed a deceptive or manipulative act (2) in furtherance of the alleged scheme to defraud (3) with scienter." *Gnanaraj v. Lilium N.V.*, No. 23-CV-80232-RLR, 2024 WL 3916758, at *10 (S.D. Fla. Aug. 23, 2024).

Importantly, a plaintiff alleging violations of Rule 10b-5(a) and (c) is typically not subject to the PSLRA's heightened pleading standard for alleged misrepresentations, unlike claims under Rule 10b-5(b). *Id.* (citing *SEC v. Rio Tinto PLC*, 41 F.4th 47, 52 (2d Cir. 2022)). "However, a plaintiff cannot evade the PSLRA's pleading standard by repackaging its misrepresentations claim as a 'scheme.'" *Id.*

As pled, it is unclear whether Plaintiffs are making a Rule 10b-5(a) and (c) or a Rule 10b-5(b) claim in Count IV. Plaintiffs summarize the alleged scheme by alleging Viva 5 is in debt and forces its "newly acquired entities, like Nature's Craft, to transfer millions of dollars in cash to Viva 5 in the form of 'loans.' Viva 5 then uses that 'up streamed' cash to pay its own substantial debts, while leaving Nature's Craft and other newly acquired entities with insufficient reserves. On top of that, Viva 5 'pushes down' [$9 million] in 'losses' to [Nature's Craft], preventing Nature's Craft from paying a dividend to the holders of its Tracking Units." Dkt. 1 ¶¶ 7, 68. At the same time, Plaintiffs' Complaint still makes references about material misrepresentations, such as "intentionally misrepresented the value of those Tracking Units," "promising that Plaintiffs," "executives knew those representations to be false," "unaware that Defendants' representations were false," and "Plaintiffs have thus suffered substantial injury as a result of Defendants' material misrepresentations." *Id.* ¶¶ 98, 99, 101, 103. This conflict about what Rule 10b-5

claim is being brought must be clarified in the amended complaint. Indeed, "[w]here a plaintiff alleges scheme liability based solely on allegations that the defendant made material misrepresentations and omissions, those claims are subsumed by the Rule 10b-5(b) misrepresentations claim." *Gnanaraj*, 2024 WL 3916758, at *11. As such, the Court finds presently lacking the attempt by Plaintiffs to recast the alleged misrepresentations as a "scheme liability" claim to avoid the PSLRA's heightened pleading standards for alleged misrepresentations. Count IV is dismissed without prejudice.

Regardless of the characterization of their Rule 10b-5 claim, it still must be dismissed for failing the PSLRA's additional scienter requirement, which is required for any Rule 10b-5 claim. *S.E.C. v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007). Scienter requires a plaintiff to state with "particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts.*, Ltd., 551 U.S. 308, 321 (2007) (citation and internal quotations omitted). Indeed, Plaintiffs' pleading must provide enough particularity to create "a strong inference that [Defendants] either intended to defraud investors or were severely reckless when they made the allegedly false or incomplete statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (internal quotations omitted). "[A] 'strong inference' of scienter means an inference that is 'cogent and at least as compelling as any opposing inference one could draw

from the facts alleged.'" *Id.* (citation omitted). "Severe recklessness" means "those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989).

Here, the only specifically alleged scienter inference raised by Plaintiffs is that Viva 5 "had no intention of creating value for Plaintiffs as holders of Nature's Craft Tracking Units. Rather, Viva 5 was only interested in rapidly buying and selling companies for quick gains or losses—mainly losses— through a process called [earnings before interest, taxes, depreciation, and amortization- i.e., "EBITDA"] arbitrage." Dkt. 1 ¶ 100. In other words, Viva 5 purchases "more and more companies with positive EBITDA and then cannibalize the cash reserves of those companies for the benefit of Viva 5 and its owners." *Id.* ¶ 80. These conclusory statements provide insufficient insight into Defendants' state of mind and awareness of potentially false or misleading statements at the time of Nature Craft's sale.

While Plaintiffs' response states that the Court can simply "infer" Defendants' intent from their "scheme" to "i) push down losses; ii) prevent distributions; and iii) engage in unconscionable related-party loans," the Court declines to do so when the

alleged scheme is unsupported by particular facts about how receiving tracking units (along with $11.5 million in cash and $4.6 million in Viva 5 common stock) following a corporate sale (where investment advisors and legal counsel represented Plaintiffs) is part of a larger "scheme" by Defendants to recklessly defraud sellers. Dkt. 37 at 17; *see also Keippel v. Health Ins. Innovations, Inc.*, No. 8:19-CV-421-02CPT, 2019 WL 5698329, at *8 (M.D. Fla. Nov. 4, 2019) (finding scienter requirement adequately pled when the complaint properly alleged that the defendants deceived consumers with repeated public representations regarding high customer satisfaction while also exchanging internal emails about "out of control" consumer complaints and alleging that individual defendants engaged in insider trading by selling their personal stock shares before the stock prices plummeted on the disclosure of the alleged fraud). Without more particular facts giving rise to a strong inference that Defendants intended to deceive Plaintiffs or acted with severe recklessness, Counts IV cannot survive dismissal at this time.

### c.  Count V- Failure to state a FSIPA claim

The elements of a cause of action under § 517.301 are identical to those under the federal securities laws, § 10(b) and Rule 10b–5, "except that the scienter requirement under Florida law is satisfied by [a] showing of mere negligence." *Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir. 2004) (citation omitted). In addition, "[t]he buyer need not show any causal connection between the

misrepresentation and his damage; indeed, he need not even show that he has been damaged." *E. F. Hutton & Co. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989) (citation omitted).

For the above reasons, the Court also dismisses Count V without prejudice. Plaintiffs' allegations in Count V are almost verbatim to the allegation made in Count IV. *Compare* Dkt. 1 ¶¶ 96-103 *with* Dkt. 1 ¶¶ 104-111. Plaintiffs must set forth with more particularity the who, what, when, where, and how of the alleged fraud to survive dismissal. As such, Plaintiffs' FSIPA claim fails for several reasons related to those addressed above, including failure to sufficiently allege misrepresentations.

Also, it is unclear in Count V whether Plaintiffs seek a recission via that count. They do not seek a recession expressly, but Plaintiffs' citation of Fla. Stat. § 517.211 suggests this remedy. *See* Dkt. 1 ¶ 104. This should be clarified.

## III.    Count VI- Negligence

Finally, in Count VI, Plaintiffs allege Defendant Bunch (Viva 5's CEO) is liable for negligence. Plaintiffs contend "1) [a] fiduciary duties exist between directors of a parent and the holders of tracking stock, and 2) directors breach those duties when they engage in self-dealing transactions." Dkt. 37 at 20. Defendants respond that CEO Bunch cannot be "negligent for allowing other executives to take

actions that are expressly permitted and, in fact, required by the Transaction documents Plaintiffs executed." Dkt. 32 at 23.

Under Florida law, the plaintiff must allege the following elements to state a claim for negligence: "(1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." *Barnett v. Dep't of Fin. Services*, 303 So. 3d 508, 513 (Fla. 2020). As discussed above, the duty element has not been adequately alleged. As pled, it is unclear whether tracking units give rise to a fiduciary duty between the parties. Plaintiffs must specify how the CEO of Viva 5 owed a legal duty to tracking unit holders of a wholly owned subsidiary based on the undisputed transaction documents. Count VI is dismissed without prejudice.

## CONCLUSION

Plaintiffs have not adequately pled their case. Notwithstanding, because the Complaint is the first operative complaint dismissed by the Court, Plaintiff will have another opportunity to do so. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion to Dismiss, Dkt. 32, is **GRANTED.** Plaintiffs' Complaint, Dkt. 1, is **DISMISSED** without prejudice.

2. If Plaintiffs chooses to file an Amended Complaint, they shall do so within **fourteen (14) days** of this Order.

3. Plaintiffs are specifically ordered not to abjure or elide the contract documents between the parties that appear to address the very relationship at bar. These need to be squarely and fully addressed in any amended complaint.

**DONE AND ORDERED** in Tampa, Florida, on February 14, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

21